Daniel P. Collins, Chief Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 13 proceedings |
| DAVID RAY TURNER, | Case No. 3:15-bk-14741-DPC |
| Debtor. | |
| NICOLE GROFF, | |
| Movant, | **ORDER GRANTING STAY RELIEF** |
| v. | **[NOT FOR PUBLICATION]** |
| DAVID RAY TURNER, Debtor, and EDWARD J. MANEY, Trustee, | |
| Respondents. | |

Before the Court is the Renewed Motion for Stay Relief ("Renewed Stay Lift Motion") of Nicole Groff ("Ms. Groff"), former spouse of David Ray Turner ("Debtor"), seeking an order of this Court granting relief from the automatic stay imposed under 11 U.S.C. § 362(a).[1] For the reasons stated below, the Court is terminating the §§ 362(a) and 1301 bankruptcy stays and waiving the 14-day stay of Bankruptcy Rule 4001(a)(3) to afford Ms. Groff and the Debtor the opportunity to return to the Arizona Superior Court, Coconino County ("State Court") to deal with all issues involving the Jamison Property and the State Court's decree dissolving the marriage of the Debtor and Ms. Groff.[2]

. . .

. . .

---

[1] Unless otherwise indicated, all Chapter, Section, and Rule references are to the Bankruptcy Code ("Code"), 11 U.S.C. §§ 101-1532 and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[2] This Order sets forth the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

1

# I. Background

## A. Bankruptcy Proceedings

1. Debtor filed his chapter 13 petition on November 18, 2015 ("Petition Date"). (DE 1).

2. Since Debtor failed to file all required documents, the Court issued a deficiency notice on November 19, 2015, (DE 4) indicating that, "[f]ailure to timely file all required documents with all required information and within the time periods stated will result in the dismissal of this case." The notice then specified five categories of documents that needed to be filed and the time frames for filing those documents.

3. On December 1, 2015, Debtor filed a motion to extend the time for filing his schedules, statements and chapter 13 plan. (DE 10). On December 1, 2015, the Court granted that motion in a form of order lodged by Debtor's counsel (DE 11), noting the required documents were due to be filed by December 18, 2015 (DE 12).

4. On December 18, 2015, Debtor filed his second motion to extend the time for filing the required documents. (DE 14). On December 18, 2015, the Court granted that motion in a form of order lodged by Debtor's counsel (DE 15), noting the required documents were due to be filed by December 30, 2015. (DE 16).

5. When the Debtor failed to comply with the Court's order of December 18, 2015, an order was entered dismissing the case ("Dismissal Order") on December 31, 2015. (DE 20). Later that day, the Debtor filed a number of documents which were to have been filed no later than December 30, 2015. (DEs 21 and 22).

6. On December 31, 2015, Debtor filed his motion to reinstate his dismissed case. (DE 23).

7. On January 5, 2016, Debtor filed an additional document which was to have been filed no later than December 30, 2015. (DE 27).

. . .

8.     On January 8, 2016, the Court granted Debtor's motion to reinstate his dismissed case.  (DE 29).

9.     On January 14, 2016, Debtor filed his motion to determine the Dismissal Order void and confirm the automatic stay ("Motion re Dismissal Order").  (DE 37).  Ms. Groff responded (DE 40) and Debtor replied (DE 42).  The Motion re Dismissal Order was heard on February 12, March 18, and April 8, 2016 (DEs 49, 69, and 81), but for reasons discussed below, was not ruled upon by the Court.

10.    On February 16, 2016, Ms. Groff filed a motion for relief from stay ("Stay Lift Motion") concerning property located at 3025 Jamison in Flagstaff, Arizona ("Jamison Property") (DEs 45, 46, and 47).  Debtor responded.  (DE 58).  The Stay Lift Motion was heard on March 18 and April 8, 2016 (DEs 69 and 81), but, for reasons discussed below, was not ruled upon by the Court.

11.    On February 22, 2016, Edward Maney ("Chapter 13 Trustee" or "Trustee") filed his motion to dismiss ("Motion to Dismiss") Debtor's chapter 13 case.  (DE 50).  Ms. Groff joined the Motion to Dismiss (DE 51), Debtor objected (DE 60), Ms. Groff replied (DE 64), and the Court heard the Motion to Dismiss on March 18, 2016 (DE 69).  The Chapter 13 Trustee filed a supplement on March 28, 2016 (DE 70), the Debtor responded (DE 78), and the Court held a continued hearing on April 8, 2016 (DE 81).  On April 11, 2016, the Court entered its order dismissing this chapter 13 case ("Second Dismissal Order") (DE 82) finding, among other things, the Debtor's bad faith in filing this case because his chapter 13 plan payments would be based on revenue gained from the sale of marijuana products.  The Court further found the Motion re Dismissal Order and Stay Lift Motion were moot in light of the Court's Second Dismissal Order. The Debtor appealed the Second Dismissal Order.  (DE 83).  Although this Court denied Debtor's motion for a stay pending appeal (DE 90), on April 21, 2016, the Ninth Circuit Bankruptcy Appellate Panel ("BAP") granted Debtor a stay pending appeal of the Second

3

Dismissal Order. (DE 100). Debtor then designated his appeal to be heard by the U.S. District Court for the District of Arizona ("District Court"). It is the Court's understanding that Debtor's appeal has been fully briefed but that oral argument has not been (and might not be) set by the District Court[3].

12.     On April 27, 2016, Ms. Groff filed her Renewed Stay Lift Motion. (DE 106). The Renewed Stay Lift Motion came before the Court on May 6, 2016 at which time Ms. Groff was given leave to file additional matters related to the zoning of the Jamison Property. (DE123). Ms. Groff's supplemental brief on the zoning issues was filed on May 31, 2016. (DE 129). Debtor's response was filed on June 27, 2016. (DE 130). A Joint Pretrial Statement was filed on August 12, 2016. (DE 132). Pretrial briefs were filed by Debtor (DE 134) and Ms. Groff. (DE 135). At the evidentiary hearing held in Flagstaff, Arizona on August 19, 2016, the Court heard testimony from Debtor and Ms. Groff. (DE 136). Closing briefs were filed by the Debtor (DE 139) and Ms. Groff (DE 140) on August 31, 2016, at which time the Court took under advisement Ms. Groff's Renewed Stay Lift Motion.

13.     On September 7, 2016 Ms. Groff notified the Court that Debtor failed to fully pay the August 1, 2016 payment due on the Wells Fargo second lien home equity credit line secured by the Jamison Property. (DE 142). On September 14, 2016, Ms. Groff also notified the Court that Debtor was criminally charged in the Flagstaff Justice Court for unlawfully producing marijuana. (DE 143).

B.     State Court Proceedings

14.     Debtor and Ms. Groff were divorced in 2007. Debtor was awarded the Jamison Property but was required by the State Court to pay the liens on the property, which liens the Debtor and Ms. Groff had both signed as obligors. Years later, the parties

---

[3] Debtor also sought this Court's order certifying his appeal directly to the 9th Circuit. (DE 87). After oral argument on May 6, 2016, the Court denied that request. (DE 122).

4

agreed that Debtor needed to refinance or sell the Jamison Property by September 30, 2015, so that Ms. Groff would no longer be liable on the obligations secured by that property. (DE 132). Debtor failed to do so. Ms. Groff filed with the State Court a petition requesting, among other things, that the State Court award her title to the Jamison Property. See Exhibit A attached to Debtor's response to the Stay Lift Motion. (DE 58-1). A State Court order ("OSC") (DE 58-2) directed Debtor to appear for a hearing on November 20, 2015, and show cause why Ms. Groff's petition should not be granted. Debtor filed his bankruptcy petition on November 18, 2015.

15. In view of the Debtor's bankruptcy filing, Ms. Groff filed a motion with the State Court requesting that the November 20, 2015, OSC hearing be continued. The State Court rescheduled that hearing to January 5, 2016.

16. As noted in paragraph 5 above, Debtor's bankruptcy was dismissed on December 31, 2015. The State Court's OSC hearing went forward on January 5, 2016. The Debtor failed to appear at that hearing. On January 6, 2016, the State Court entered an order that, among other things, the Jamison Property be transferred to Ms. Groff. The State Court's order was recorded with the Coconino County Recorder's Office that same day. Debtor's bankruptcy was reinstated by this Court's order of January 8, 2016 (DE 29).

17. Ms. Groff now seeks this Court's order lifting the bankruptcy automatic stay so the State Court may deal with issues involving the Jamison Property and the State Court's decree which dissolved the marriage of Debtor and Ms. Groff.


## II.  Issues

1. Was this Court's December 31, 2015 Dismissal Order proper or did it violate the Bankruptcy Code?

2. Did Ms. Groff or the State Court violate the automatic stay by seeking or ordering the November 20, 2015, OSC hearing be postponed?

3.     Do grounds exist to terminate the bankruptcy automatic stay under 11 U.S.C. §§ 362(d)(1) or (2)?

4.     Does the Ninth Circuit's recent *McIntosh* decision play a role in the determination of Ms. Groff's Renewed Stay Lift Motion?

## III.  Law

### A.     The Propriety of the Dismissal Order

The Bankruptcy Code requires debtors to file certain documents enumerated under 11 U.S.C. § 521(a)(1):

> . . .
>
> (A) a list of creditors; and
>
> (B) unless the court orders otherwise—
>
>> (i) a schedule of assets and liabilities;
>> (ii) a schedule of current income and current expenditures;
>> (iii) a statement of the debtor's financial affairs and, if section 342(b) applies, a certificate—
>>
>>> (I) of an attorney whose name is indicated on the petition as the attorney for the debtor, or a bankruptcy petition preparer signing the petition under section 110(b)(1), indicating that such attorney or the bankruptcy petition preparer delivered to the debtor the notice required by section 342(b); or
>>>
>>> (II) if no attorney is so indicated, and no bankruptcy petition preparer signed the petition, of the debtor that such notice was received and read by the debtor;
>>
>> (iv) copies of all payment advices or other evidence of payment received within 60 days before the date of the

6

filing of the petition, by the debtor from any employer of the debtor;

(v) a statement of the amount of monthly net income, itemized to show how the amount is calculated; and

(vi) a statement disclosing any reasonably anticipated increase in income or expenditures over the 12-month period following the date of the filing of the petition;

. . .

Section 521(i) then describes the consequences of not filing the required documents listed above:

(1) Subject to paragraphs (2) and (4) and notwithstanding section 707(a), if an individual debtor in a voluntary case under chapter 7 or 13 fails to file all of the information required under subsection (a)(1) within 45 days after the date of the filing of the petition, the case shall be automatically dismissed effective on the 46th day after the date of the filing of the petition. (emphasis added)

Bankruptcy Rule 1007 also describes the filing requirements and time limits for new debtors:

. . .

(b) SCHEDULES, STATEMENTS, AND OTHER DOCUMENTS REQUIRED.

(1) Except in a chapter 9 municipality case, the debtor, unless the court orders otherwise, shall file the following schedules, statements, and other documents, prepared as prescribed by the appropriate Official Forms, if any:

(A) schedules of assets and liabilities;

(B) a schedule of current income and expenditures;

7

(C) a schedule of executory contracts and unexpired leases;

(D) a statement of financial affairs;

(E) copies of all payment advices or other evidence of payment, if any, received by the debtor from an employer within 60 days before the filing of the petition, with redaction of all but the last four digits of the debtor's social-security number or individual taxpayer-identification number; and

(F) a record of any interest that the debtor has in an account or program of the type specified in §521(c) of the Code.

. . .

(c) TIME LIMITS. In a voluntary case, the schedules, statements, and other documents required by subdivision (b)(1), (4), (5), and (6) shall be filed with the petition or within 14 days thereafter, except as otherwise provided in subdivisions (d), (e), (f), and (h) of this rule.

. . .

The Code further explains how dismissals may occur in 11 U.S.C. §1307:

. . .

(c) Except as provided in subsection (f) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including—

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees and charges required under chapter 123 of title 28;

8

(3) failure to file a plan timely under section 1321 of this title;

(4) failure to commence making timely payments under section 1326 of this title;

(5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan;

(6) material default by the debtor with respect to a term of a confirmed plan;

(7) revocation of the order of confirmation under section 1330 of this title, and denial of confirmation of a modified plan under section 1329 of this title;

(8) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan other than completion of payments under the plan;

(9) only on request of the United States trustee, failure of the debtor to file, within fifteen days, or such additional time as the court may allow, after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a);

(10) only on request of the United States trustee, failure to timely file the information required by paragraph (2) of section 521(a); or

(11) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

Bankruptcy Rule 1017 reinforces the procedure for dismissal under §1307(c)(9):

. . .

(c) Dismissal of Voluntary Chapter 7 or Chapter 13 Case for Failure To Timely File List of Creditors, Schedules, and Statement of Financial Affairs. The court may dismiss a voluntary chapter 7 or chapter 13 case under §707(a)(3) or

9

§1307(c)(9) after a hearing on notice served by the United States trustee on the debtor, the trustee, and any other entities as the court directs.

Finally, this District's Local Bankruptcy Rule 1017-1 describes the consequences of failing to file the required documents:

. . .

(b) Dismissal Without Further Notice. Failure of the debtor to file in a timely manner the documents required by the Rules or the Local Rules or to appear at the meeting of creditors shall be cause for dismissal of the bankruptcy case without further notice.

Section 105(a) of the Bankruptcy Code gives the Court certain equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of . . ." the Code. 11 U.S.C. § 105(a). However, the Ninth Circuit has interpreted that section and placed limitations on the use of these powers:

The bankruptcy court lacked equitable power to grant Anwar relief from her untimely filings. "In bankruptcy cases, a court's equitable power is derived from 11 U.S.C. § 105(a)," *In re Anwiler*, 958 F.2d at 928 n. 5, which authorizes the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]," 11 U.S.C. § 105(a). However, "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). These confines include deadlines set by the Federal Rules of Bankruptcy Procedure.

*Anwar v. Johnson*, 720 F.3d 1183, 1187 (9th Cir. 2013). The Supreme Court also commented on the use of § 105(a) equitable powers in *Law v. Siegel*:

A bankruptcy court has statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a). And it may also possess "inherent power ... to sanction

10

'abusive litigation practices.'" *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375–376, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007). But in exercising those statutory and inherent powers, a bankruptcy court may not contravene specific statutory provisions.

*Law v. Siegel*, 134 S. Ct. 1188, 1194, 188 L. Ed. 2d 146 (2014).

The Ninth Circuit BAP ruled on sua sponte dismissals for failure to file documents in *In re Tennant*:

> The court can dismiss a case sua sponte under Section 105(a). *In re Meints*, 222 B.R. 870, 871–72 (D.Neb.1998); *In re Campbell*, 266 B.R. 709, 712 (Bankr.W.D.Ark.2001); *In re Greene*, 127 B.R. 805, 807–808 (Bankr.N.D.Ohio 1991); *In re Welling*, 102 B.R. 720, 722 (Bankr.S.D.Iowa 1989).
>
> The bankruptcy court based the dismissal of Debtor's case on his failure to file the Statement of Financial Affairs within 15 days. It enforced a portion of Rule 1007(c), quoted in note 2 supra, which required Debtor to file all documents, including the Statement of Financial Affairs, within 15 days after the commencement of his bankruptcy case on January 13, 2004, or to seek an extension of time. Debtor neither filed the Statement of Financial Affairs timely nor exercised his option to seek an extension of time. To enforce the Comply Order and Rule 1007(c), the court was authorized to dismiss Debtor's case sua sponte. Section 105(a) makes "crystal clear" the court's power to act sua sponte where no party in interest or the United States trustee has filed a motion to dismiss a bankruptcy case. *Greene*, 127 B.R. at 807–808; see also *Meints*, 222 B.R. at 872; *Campbell*, 266 B.R. at 712; *Bayer v. Hill (In re Bayer)*, 210 B.R. 794, 798–99 (8th Cir. BAP 1997); *Minkes v. LaBarge (In re Minkes)*, 237 B.R. 476, 478–479 (8th Cir. BAP 1999).

*In re Tennant*, 318 B.R. 860, 869 (B.A.P. 9th Cir. 2004).

. . .

. . .

. . .

11

B.  The State Court's Postponement of the OSC and the Automatic Stay

11 U.S.C. § 362 states:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

The Ninth Circuit has discussed the types of actions that violated the automatic stay in *Matter of Roach* and *In re Peters*:

> The purpose of the automatic stay is to give the debtor a breathing spell from his creditors, to stop all collection efforts, harassment and foreclosure actions. The automatic stay also prevents piecemeal diminution of the debtor's estate. The automatic stay does not necessarily prevent all activity outside the bankruptcy forum.
>
> Here the Bank merely maintained the status quo, and did not harass, interfere or gain any advantage. This is consistent with the purpose of the automatic stay provision.

*Matter of Roach*, 660 F.2d 1316, 1319 (9th Cir. 1981).

> Thus, the Roach court's holding is applicable in the post-confirmation context because the postponements merely continue to maintain the status quo.

*In re Peters*, 101 F.3d 618, 620 (9th Cir. 1996).

Following *Roach* and *Peters*, the Ninth Circuit further analyzed post-petition collection actions as stay violations in *Eskanos & Adler, P.C. v. Leetien*:

> A debtor enjoys little satisfaction from a creditor's honest words that it files a collection action in state court but refrains from persisting in the collection action until bankruptcy

12

1  proceedings sort itself out. Active state filings exist as more
   than placeholders—the risk of default judgment looms over
2  the debtor throughout.

3  . . .

4  Alternatively, Eskanos cites two Ninth Circuit cases holding
   the postponement of foreclosure sales by creditors does not
5  violate *1215 an automatic stay. *First Nat'l Bank v. Roach* (*In
   re Roach*), 660 F.2d 1316, 1318 (9th Cir.1981); *Mason–
6  McDuffie Mortg. Corp. v. Peters* (*In re Peters*), 101 F.3d 618,
7  620 (9th Cir.1996) (per curiam).

8  Both *Roach* and *Peters* are inapposite. In each the legal
9  holding addressed postponements of actions to collect debts
   where the creditor notified the debtor of the postponement and
10 maintained the bankruptcy proceeding's status quo. *Roach*,
   660 F.2d at 1317; *Peters*, 101 F.3d at 619. The postponement
11 acted as an immediate freeze of non-bankruptcy proceedings.
12 Maintenance of an active collection action against a debtor,
   on the other hand, neither postpones collection nor maintains
13 the status quo.

14 *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1214–15 (9th Cir. 2002).

15

16 C.   The Standards For Termination or Annulment of the Automatic Stay

17    Under 11 U.S.C. § 362(d)(1), the Court shall grant relief from stay for "cause" on

18 request of a party in interest after notice and a hearing. "What constitutes 'cause' for

19 granting relief from the automatic stay is decided on a case-by-case basis." *In re

20 Kronemyer*, 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009) citing *In re Tucson Estates, Inc.*,

21 912 F.2d 1162, 1166 (9th Cir.1990). "Cause" for relief from stay includes but is not

22 limited to "the lack of adequate protection of an interest in property of [a] party in

23 interest."

24    Under 11 U.S.C. § 362(d)(2), the stay of an act against property of the estate shall

25 be terminated or annulled if:

26    A. "The debtor does not have an equity in such property; and

13

1    B.  Such property is not necessary to an effective reorganization;"

2

3        D.        Import of the *McIntosh* Decision

4        The Consolidated Appropriations Act 2016, Pub. L. No. 114-113, section 542 ("the

5    Rider") provides that the DOJ may not use funds under the Appropriations Act to prevent

6    Medical Marijuana States ". . . from implementing their own laws that authorize the use,

7    distribution, possession, or cultivation of medical marijuana." However, the Rider does

8    not prohibit the DOJ from prosecuting individuals "who engage in conduct unauthorized

9    under state medical marijuana laws."  *US v. McIntosh*, 833 F.3d 1163 (9th Cir. 2016).

10   Prosecuting individuals "who do not strictly comply with all state-law conditions

11   regarding the use, distribution, possession, and cultivation of medical marijuana" does not

12   violate the Rider. *Id*.  The Rider pertains only to the budget year ended September 30,

13   2016.  There is no budget yet approved for the fiscal year which began on October 1, 2016.

14

15   **IV.    Analysis**

16       A.        The Dismissal Order

17       The Debtor argues that the Dismissal Order was improper because the Clerk's

18   Office automatically dismissed the case after only 43 days had passed since the Petition

19   Date.  11 U.S.C. § 521(i) requires 45 days to have passed before a case may be dismissed

20   automatically on the 46th day for failure to file documents. The Debtor believes that the

21   Clerk's Office used Local Bankruptcy Rule 1017-1 to contravene the Code's explicit

22   language in order to automatically dismiss this case earlier than was allowed under the

23   Code.

24       The Court finds that the Clerk's Office did not dismiss this case under Local Rule

25   1017-1.  Instead, the Court dismissed this case following the Debtor's failure to comply

26   with the Court's Order Granting Second Motion to Extend Time to File Schedules and

14

Statements (DE 16). The Code grants courts the authority to dismiss cases for failure to file documents under 11 U.S.C. § 1307(c)(9), and Bankruptcy Rule 1017(c). While § 1307(c)(9) and Bankruptcy Rule 1017(c) require the motion of the United States Trustee for a dismissal for failure to file documents under § 521(a), the 9th Circuit BAP has held that this restriction only applies to parties in interest, and does not interfere with the Court's ability to act sua sponte under § 105. *In re Tennant*, 318 B.R. 860, 869-70 (B.A.P. 9th Cir. 2004).

Section 105(a) allows a court to ". . . issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Here, the Debtor had 14 days from the Petition Date to file the required documents under Bankruptcy Rule 1007(c). In addition to the 14-day deadline, Debtor had 45 days from the Petition Date to file documents required by § 521(a), or else the case would be automatically dismissed by operation of § 521(i). Twice the Court extended the 14-day deadline via written orders drafted and lodged by Debtor's counsel. The second extension ordered that Debtor's schedules, statements, and Chapter 13 Plan were to be filed by December 30, 2015. When the required documents were not filed, on December 31, 2016, the case was dismissed sua sponte.

Because this case was dismissed sua sponte for failure to comply with the Court's Order Granting Second Motion to Extend Time to File Schedules and Statements, the Debtor's argument that the Clerk's Office used Local Rule 1017-1 to contravene specific provisions of the Code in dismissing the case is inapplicable. The Dismissal Order was a permissible use of the Court's powers under § 105.

. . .

. . .

. . .

. . .

15

B.  The State Court's Postponement of the OSC Did Not Violate the Automatic
Stay

The Debtor argues the bankruptcy court should not grant stay relief based on the State Court's order transferring title to the Jamison Property to Ms. Groff because the State Court order violated the automatic stay of 11 U.S.C. § 326(a).  Debtor argues that Plaintiff's Motion to Postpone the OSC Hearing and the State Court's Order Continuing the OSC Hearing were done at a time when the automatic stay was in place.  Thus, the Debtor argues, the State Court's Order transferring title to the Jamison Property to Ms. Groff is void because it came as a result of the improperly postponed OSC Hearing.

As noted in Section III(B) above, The Ninth Circuit has explained that "[t]he automatic stay does not necessarily prevent all activity outside the bankruptcy forum." *Matter of Roach*, 660 F.2d at 1319.  In *Matter of Roach*, the Ninth Circuit held that First National Bank did not violate the automatic stay when it published notices of postponement of foreclosure sale and specifications of the new sale date. Postponing the sale merely maintained the status quo, and did not ". . . harass, interfere or gain any advantage." *Id*. at 1318; see also *In re Peters*, 101 F.3d 618 (9th Cir. 1996) (holding that creditor's postponement of foreclosure sale merely maintains the status quo and is not a stay violation).

Following *Roach* and *Peters*, the Ninth Circuit further analyzed post-petition collection actions as stay violations in *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210 (9th Cir. 2002).  There, the plaintiff filed a post-petition collections action in state court on behalf of creditor First Select.  Following the debtor's failed attempts at contacting the plaintiff to have the collections action stayed or dismissed, the debtor filed a motion with the bankruptcy court seeking sanctions for the stay violation.  The bankruptcy court found that a stay violation had occurred, and awarded sanctions.  On appeal, the Ninth Circuit affirmed.  First Select argued that it had not violated the stay because it did not "carry

16

forward or persist in its collection action, but rather merely calendared the action for future determination." *Id*. at 1214. In refuting this proposition, the Ninth Circuit explained that without postponing, staying, or dismissing the collection actions, debtors "enjoy[] little satisfaction from a creditor's honest words that it files a collection action in state court but refrains from persisting . . ." during the bankruptcy. *Id*. In other words, a creditor's inaction in the collections action is insufficient; the creditor must affirmatively discontinue post-petition collection actions.

Here, the Debtor is arguing that Ms. Groff continued her collection action in the State Court during the pendency of Debtor's bankruptcy. While Ms. Groff may have literally sought a continuance of the OSC hearing, she merely maintained the status quo as permitted by *Roach* and *Peters*. Unlike the creditor in *Leetien* who took no affirmative steps to discontinue the state court action, here, Ms. Groff filed a Motion to Postpone the OSC hearing which was subsequently granted in an order by the State Court. Therefore, the Court finds that when the OSC hearing took place on January 5, 2016, after the bankruptcy had been dismissed and before it had been reinstated, neither Ms. Groff nor the State Court violated the automatic stay. Moreover, reinstatement of Debtor's chapter 13 on January 8, 2016 did not retroactively reinstate the bankruptcy automatic stay. *In re Sewell,* 345 B.R. 174, 179 (B.A.P. 9th Cir. 2006) ("Reinstatement of a case restores the automatic stay. Most reported decisions reimpose the automatic stay only prospectively.") *See, e.g., In re Lomagno,* 320 B.R. 473, 479–82 (1st Cir. BAP) (reversal of dismissal order did not retroactively reimpose automatic stay), *aff'd,* 429 F.3d 16 (1st Cir.2005). The State Court order transferring the Jamison Property to Groff is not void. That order was entered at a time Debtor was not in bankruptcy.

While the Court is ruling that the postponement of the OSC hearing was not a stay violation, it remains to be determined by the State Court whether the State Court's January 6, 2016 order was procedurally proper. Debtor claims he had no notice of the

17

January 5, 2016 continued OSC hearing.  That is a matter to be taken up by Debtor in the State Court.

If the State Court determines the transfer of the Jamison Property was pursuant to a properly entered order of the State Court, it remains to be determined by this Court whether that transfer of the Jamison Property was an avoidable preferential or fraudulent transfer.  Debtor claims the State Court order transferring the Jamison Property to Ms. Groff is a fraudulent transfer. In view of the Court's findings below related to the value of the Jamison Property and the debt encumbering that property, it is uncertain whether the Debtor could successfully assert a claim to set aside an allegedly fraudulent transfer to Ms. Groff.  However, there is no pending fraudulent transfer action before this Court nor is this Court making findings concerning any elements of a fraudulent transfer claim which might someday be filed related to this transfer.

C.    Termination Or Annulment Of The Automatic Stay

1.    *Cause Exists to Terminate the Automatic Stay Under 11 U.S.C. § 362(d)(1).*

Ms. Groff holds an interest in the Jamison Property in that the State Court ordered that property be transferred to her in its January 6, 2016 order.  Whether that transfer stands up under further scrutiny by the State Court remains to be seen.  At present, however, Ms. Groff holds title to the Jamison Property and holds additional interests in the Jamison Property by virtue of her liability on both the first and second liens against that property.  Ms. Groff has standing to bring her Renewed Stay Lift Motion.

This Court dismissed Debtor's chapter 13 case for, among other reasons, bad faith due to Debtor's engagement in commercial marijuana operations which are illegal under federal law. Debtor contends the Court's findings in connection with the dismissal of this case cannot stand as the grounds for stay relief because the dismissal

18

order has been stayed by the BAP. This Court agrees. However, that is not to suggest this Court cannot look to other grounds for determining "cause" exists to terminate the stay in favor of Ms. Groff.

At the close of the trial of this matter the Court queried whether, if Ms. Groff's Renewed Stay Lift Motion were to be granted by this Court, would the Debtor's appeal of the Dismissal Order become irrelevant if the State Court then confirms its transfer of the Jamison Property to Ms. Groff. Neither party has filed anything with this Court suggesting this Court is barred from entering stay relief while the Dismissal Order is on appeal. Even though this Court's Dismissal Order has been stayed by the BAP pending Debtor's appeal of that order, Debtor's chapter 13 must continue to be administered by this Court. Where stay relief is appropriate the Court finds the BAP's stay pending appeal does not inhibit this Court from entering stay relief to enable the State Court to deal with the parties' post-divorce rights to and claims to the Jamison Property.

Ms. Groff testified that she viewed the Jamison Property in early January 2016 and saw no beds, couches or other furnishings that would be consistent with a person occupying the Jamison Property as a residence. Pictures taken by her and admitted into evidence at trial reveal that virtually the entire Jamison Property was occupied by marijuana plants, grow lamps, watering systems and other materials used to support the Debtor's production of marijuana plants and products. The Jamison Property is just under 1,400 square feet and consists of 1.5 bathrooms and 3 bedrooms. Although Debtor testified that he grows 50-60 plants his testimony is not credible. 50 to 60 plants could be managed in only one room of the Jamison Property. Ms. Groff's testimony and pictures admitted at trial revealed the existence of many more plants in January of 2016.

Debtor claimed the Jamison Property as his exempt homestead. There were no timely objections to this declaration. Debtor testified that he lives at the Jamison Property 80% of the time and, when he has custody of his two teenage children, they stay

at his home at 2545 S. Sonoran Lane in Flagstaff, Arizona ("Sonoran Property"). Debtor's testimony concerning his residential use of the Jamison Property is not credible. This Court finds that at all relevant times he has lived at the Sonoran Property and that he was not acting in good faith when he declared the Jamison Property as his homestead. Debtor's homestead claim was contrary to his true use of the Jamison Property, namely to house his commercial marijuana operations.

Prior to the Petition Date, Debtor was in arrears on the first Jamison Property lien in the amount of $3,419.86. He was also in default on the second lien. After the Petition Date and prior to July 2016, Debtor failed to make any payments on these two secured claims. When Debtor fell behind on his prepetition payments to these two lienholders, Ms. Groff received negative credit reports from such creditors. Those negative credit reports, in turn, caused the State of Wyoming to inactivate Ms. Groff's mortgage brokerage license. It was not until Ms. Groff brought both loans current that Wyoming reactivated her mortgage brokerage license. In an effort to preserve her credit score and mortgage brokerage licenses during these bankruptcy proceedings, Ms. Groff paid $11,000 to BSI and $4,308.63 to Wells Fargo. Debtor has not repaid Ms. Groff any portion of these payments totaling $15,308.63. Ms. Groff has been harmed to the tune of at least $15,308.63 due to Debtor's failure to abide by the State Court divorce decree which required that he pay the liens encumbering the Jamison Property.

Debtor holds a license to serve as a caregiver authorized to sell up to 2.5 ounces of marijuana every two weeks to his lone patient. According to the Debtor he realizes about $100/month in connection with these authorized sales. Neither Debtor nor Organic Mountain Medical, LLC (the "LLC"), Debtor's wholly owned marijuana company, are authorized under Arizona law as medical marijuana dispensaries. Growing, transporting and selling marijuana is illegal under the laws of the United States. See the Controlled Substance Act at 21 U.S.C. § 801, et seq. It is also illegal under Arizona law,

except to the extent permitted by Arizona's Medical Marijuana laws. See A.R.S. §§ 36-2801, et seq.

Debtor admits he grows and distributes (or, in his words, "donates") far more than what he is permitted to do under his Arizona caregiver license. In particular, Debtor admits he grows and donates marijuana to a certain few relatives suffering from serious illness and then donates the bigger end of his marijuana crop to licensed Arizona marijuana dispensaries. Those unnamed dispensaries, in turn, pay him consulting fees. Debtor testified that, but for his marijuana donations to dispensaries, he would not receive consulting fees from them. Those consulting fees bring Debtor approximately $4,800/month. This Court finds such donations are not permitted by federal or Arizona law. Further, this Court finds Debtor's "marijuana donations for consulting fees" arrangement with dispensaries is nothing more than (thinly) disguised sales of marijuana. Such sales are not permitted by federal or Arizona law. The Court finds Debtor is not operating his LLC in compliance with Arizona's Medical Marijuana laws or in compliance with federal law.

If Debtor's LLC's revenues did not include so called "consulting fees," Debtor's chapter 13 plan could never be confirmed by this Court as his expenses far exceed the revenues otherwise generated by the LLC and paid to Debtor.

This Court finds cause exists to lift the automatic stay pursuant to 11 U.S.C. § 362(d)(1). Such "cause" includes:

1. The Debtor misrepresenting the Jamison Property as his homestead;

2. The Debtor's failure to pay any portion of the first or second liens against the Jamison Property until July 2016, over eight months after the Petition Date;

3.      The damage Debtor caused to the Jamison Property (See page 23 below);

4.      The damage to Ms. Groff caused by Debtor when he failed to pay the first and second liens against the Jamison Property;

5.      The Debtor's failure to repay Ms. Groff for any portion of the $15,308.63 paid by her to keep current the first and second Jamison Property liens;

6.      The Debtor's failure to abide by Arizona law while engaged in the marijuana business at the Jamison Property;

7.      The Jamison Property could be subject to Arizona or federal forfeiture proceeds (see Section IV(D), below);

8.      The Debtor's inability to confirm a feasible chapter 13 plan; and

9.      The Debtor's failure to credibly testify at the stay lift trial conducted by this Court. [4]

The Court finds that any one of these nine causes stand as grounds to grant stay relief under § 363(d)(1).

2.      *The Stay Is Lifted Pursuant to 11 U.S.C. § 362(d)(2).*

Debtor's original bankruptcy schedules (DE 21) reported a $225,000 value of the Jamison Property. His amended schedules filed August 25, 2016, continued to reflect the same value. Although Debtor testified on August 19, 2016, that the Jamison Property value escalated to between $260,000 and $280,000, that testimony is not credible as it is directly contradicted by his virtually simultaneous amended schedules.

---

[4] Ms. Gross filed a Notice of Debtor's Failure to Pay Wells Fargo Mortgage for Month of August 2016 on September 7, 2016 (DE 142) and Notice of Marijuana-Related Criminal Charges Pending Against Debtor on September 14, 2016 (DE 143). This Order is not based upon either of these documents.

The Jamison Property is encumbered by two liens, both of which are the obligations of Debtor and Ms. Groff. The first lien to Bank of America (now BSI Financial) totaled $125,135.33 as of August 12, 2016. The second lien, held by Wells Fargo Bank, totaled $72,767 as of August 5, 2016. Together these liens total $197,902.33.

Ms. Groff testified that the Jamison Property is now tainted as a marijuana growing facility and that fact must be revealed in disclosures to any potential buyer. She contends this will cause a reduction in the price any buyer will pay for the home. This Court finds Ms. Groff is correct but the Court need not determine the magnitude of the diminution of the Jamison Property's value in light of other findings in this paragraph. The Court adopts Debtor's valuation revealed in his schedules and, therefore, finds the Jamison Property could be sold for $225,000 if it were habitable, which it currently is not. Debtor testified the property could be brought up to standards with an investment of $5,000-$10,000. The Court finds such improvements are necessitated by the damage Debtor has caused to the Jamison Property. Ms. Groff testified that it would take approximately $35,000 to rehabilitate the Jamison Property to become saleable as a residence. This Court finds that the Jamison Property would take an investment of not less than $20,000 to make that property marketable as a habitable residence. The Court also finds that, upon sale of the Jamison Property, the seller will need to cover a number of closing costs, commissions, etc. which the Court finds will conservatively cost not less than $10,000 (under 5% of the sales price). A sale price of $225,000 less rehab costs of $20,000 less sale costs of $10,000 will produce net sales proceeds of $195,000, an amount less than the liens which total nearly $198,000. The Court concludes, therefore, there is no equity in the Jamison Property.

Debtor testified that the LLC is wholly owned by him. The LLC provides his sole source of income. The sole source of gross income generated by the LLC comes from marijuana related activity. Debtor testified that the LLC pays him $1,300/month for

use of the Jamison Property. Debtor, in turn, plans to use the rental proceeds to pay the monthly note payments owed on the first and second liens secured by the Jamison Property. The Debtor also testified that he works 15 hours per day at the Jamison Property to conduct the LLC's marijuana business.[5] This Court also finds the LLC and Debtor need property nowhere near the size of the Jamison Property to produce every two weeks 2.5 ounces of marijuana for sale to Debtor's only patient. The Court finds the Debtor must find a facility far smaller and at a cost for less than the sum of $1,300/month paid by the LLC to conduct the LLC's marijuana operation. Even if the Debtor is permitted to operate a marijuana business while in a chapter 13 bankruptcy, the Court finds the Jamison Property is not necessary for conducting such operations.

As there is no equity in the Jamison Property and the Jamison Property is not necessary to an effective reorganization of the Debtor, Ms. Groff is entitled to stay relief under 11 U.S.C. § 362(d)(2).

D. **The Ninth Circuit's McIntosh Decision Does Not Prevent Stay Relief In Favor Of Ms. Groff**

The *McIntosh* case concerned the viability of federal court criminal actions against defendants in states where some level of marijuana use (e.g. medical, recreational, etc.) is permitted under state law. While that case does not directly impact the question of whether an interested party should or should not be given relief from the bankruptcy automatic stay in the Arizona bankruptcy of a producer and seller of marijuana, the *McIntosh* case does advise an examination of whether the Debtor's marijuana activities are in compliance with Arizona's Medical Marijuana laws.

In *McIntosh*, the Ninth Circuit noted that federal prosecution of marijuana related crimes is not barred by congressional spending legislation if the perpetrator was growing,

---

[5] The Court finds Debtor's testimony in this regard lacks credibility.

transporting or selling marijuana products in a manner not in compliance with state approved marijuana laws. See *US v. McIntosh*, 833 F.3d 1163 (9th Cir. 2016). In view of this Court's findings that Debtor's marijuana operations are not conforming to federal or Arizona law, the Jamison Property and personal property owned or controlled by Debtor's LLC may well be subject to forfeiture under state or federal criminal forfeiture laws. See 21 U.S.C. § 801 and A.R.S. § 13-4301, et seq.

## Conclusion

This Court is well aware that many of its findings will add additional support to a request that Debtor's chapter 13 bankruptcy be dismissed. There is, however, no pending motion before this Court seeking such relief. Rather, the Second Dismissal Order of this Court (DE 82) is on appeal to the District Court. This Court is not inclined to (and may well be prohibited from) entering another dismissal order, particularly since such additional grounds are related to the activities which formed the basis of this Court's Second Dismissal Order.

In view of the Court's findings in this Order Granting Stay Relief, the Court need not address Ms. Groff's contention that Debtor has violated the zoning laws of Coconino County or the City of Flagstaff. Cause exists to lift the bankruptcy stay, with or without a finding of Debtor's zoning violations. Moreover, those governmental units are better suited to address zoning questions and are not stayed by the bankruptcy automatic stay should they so desire.

For the reasons stated herein, the Court orders that the bankruptcy stays imposed as to Ms. Groff and Debtor under 11 U.S.C. §§ 362(a) and 1301 are hereby terminated for cause under § 362(d)(1) and under 11 U.S.C. §362(d)(2) because there is no equity in the Jamison Property and the Jamison Property is not necessary to an effective reorganization of the Debtor. Further, the Court waives the 14-day stay referenced in Bankruptcy Rule

25

4001(a)(3). This Order Granting Stay Relief enables the State Court to deal with all issues pertaining to the Jamison Property and the State Court's decree dissolving the marriage of Ms. Groff and Debtor.

**DATED AND SIGNED ABOVE.**

COPY of the foregoing mailed by the BNC and/or
sent by auto-generated mail to the following interested parties:

Aubrey Thomas
DAVIS MILES MCGUIRE GARDNER, PLLC
9 W. Cherry Avenue, Suite B
Flagstaff, AZ 86001
Attorney for Debtor

Mary Martin
Andrew Dudley
101 N. 1st Ave., Suite 1775
Phoenix, AZ 85003
Attorneys for Edward J. Maney, Chapter 13 Trustee

Michael Gordon
GORDON & GORDON, P.L.L.C.
850 Cove Parkway, Ste. A
Cottonwood, AZ 86326
Attorney for Nicole Groff

David Ray Turner
3025 S Jamison Blvd
Flagstaff, AZ 86004
Debtor

Elizabeth C. Amorosi
Office of the U.S. Trustee
230 N. 1st Avenue, Suite 204
Phoenix, AZ 85003
United States Trustee